IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY STANKIEWICZ, | : CIVIL ACTION NO. 3:20-CV-2021 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| PUMP N' PANTRY, INC., and PUMP N' PANTRY, INC., | : |
| Defendants | : |

# MEMORANDUM

Plaintiff Amy Stankiewicz brings retaliation claims against her former employer pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. § 955.  Defendant Pump N' Pantry, Inc.[1] ("Pump N' Pantry"), moves to dismiss Stankiewicz's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, we will deny the motion.

I.      **Factual Background & Procedural History**

Stankiewicz began working for Pump N' Pantry in 1999 at its Lenox, Pennsylvania location.  (See Doc. 19 ¶ 10).  Prior to the events underlying this litigation, Stankiewicz never incurred any "issues, complaints, or write ups" during

---

[1] The operative complaint (Doc. 19) names two locations of Pump N' Pantry, Inc.: its Lenox, Pennsylvania location as well as its Montrose, Pennsylvania location.  (See id. at 1).  This memorandum will refer to Pump N' Pantry as a singular defendant.

her employment. (See id. ¶ 38). In early May 2020, Pump N' Pantry's Lenox location closed for two weeks for "suspected exposure to COVID-19." (See id. ¶ 12). When the location reopened, Stankiewicz was reassigned to an earlier shift with a different shift lead, Justin Hayes. (See id. ¶¶ 13-14).

According to the complaint, Stankiewicz observed Hayes making "blatant racist [and] derogatory statements" toward customers who were people of color. (See id. ¶¶ 14-25). Hayes allegedly refused to assist nonwhite customers on several occasions and called nonwhite customers "rude pieces of shit" and "you stupid people." (See id. ¶¶ 16-23). Stankiewicz avers Hayes also made homophobic comments, including "gays need to be shot." (See id. ¶ 26). Stankiewicz informed Hayes she did not appreciate his behavior, particularly because her son-in-law, who is also employed by Pump N' Pantry, is gay. (See id. ¶ 27). Stankiewicz alleges Hayes continued to make homophobic statements to her while knowing that her son and son-in-law are gay. (See id. ¶ 28). Stankiewicz complained about Hayes' statements to her manager and notified her manager that she was the mother-in-law of a gay coworker. (See id. ¶ 29). Her manager reportedly told Stankiewicz "she would take care of it." (See id. ¶ 30). But Stankiewicz received no further information from management or human resources about her complaint. (See id. ¶¶ 31, 34). Instead, Stankiewicz's manager claimed Stankiewicz was "refusing to work her schedule," and on May 14, 2020, Stankiewicz was removed from Pump N' Pantry's schedule. (See id. ¶¶ 32, 36). No Pump N' Pantry representative has communicated with Stankiewicz since that date. (See id.)

After exhausting her administrative remedies, Stankiewicz filed a complaint in November 2020, alleging one count of retaliation under Title VII and one count of retaliation under the PHRA. Following the court's April 2021 opinion and order dismissing the original complaint without prejudice, Stankiewicz filed the operative complaint on May 4, 2021, alleging three counts of retaliation under Section 1981, Title VII, and the PHRA. Pump N' Pantry moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

**III.   Discussion**

    **A.   Retaliation Under Section 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  See 42 U.S.C. § 1981(a).  In 1991, Congress amended Section 1981 and defined "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions, of the contractual relationship."  See id. § 1981(b).  Under this expanded definition, Section 1981 encompasses retaliation claims.  See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008).

Section 1981 prohibits an employer from retaliating against an employee who complains that the contractual rights of another were violated.  See id. at 445.  To

establish a *prima facie* case of retaliation under Section 1981, a plaintiff must allege (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.[2]  See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017).  To do so, a plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements."  Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (citation omitted).  Pump N' Pantry argues Stankiewicz fails to plead the first and third elements.  (See Doc. 21 at 6-10).

       1.    ***Protected Activity***

A plaintiff engages in protected activity when she complains about racial discrimination that would violate Section 1981.  See Oliva *ex rel.* McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010).  The plaintiff must act under "a good faith, reasonable belief that a violation existed."  See Castleberry v. STI Grp., 863 F.3d 259, 267 (3d Cir. 2017) (citing Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015)).  An employee acts under a good faith, reasonable belief when she complains about racial discrimination that impairs contract formation and enforcement.  See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).  While denial of service may violate Section 1981, it is not always required.  See Pinckney v. Pep Boys–

---

[2] The substantive elements of a retaliation claim are generally identical under Section 1981 and Title VII, except that Section 1981 is solely based on complaints of racial discrimination.  See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 256-57 (3d Cir. 2017).

5

Manny Moe & Jack, No. 19-3775, 2021 WL 3578983, at *2 (3d Cir. Aug. 13, 2021) (nonprecedential) (stating whether discrimination is actionable under Section 1981 "cannot be reduced to simple questions like 'were plaintiffs denied service' or 'did they face racial hostility'").

Stankiewicz satisfies the first element of her retaliation claim. She avers that she observed her shift leader, Hayes, make racist and derogatory statements to nonwhite customers, referring to them as "rude pieces of shit." (See Doc. 19 ¶¶ 14, 17). Hayes also refused to wait on three nonwhite customers, asking Stankiewicz to do it instead. (See id. ¶¶ 15-16). On another occasion, Hayes told a Jamaican customer to use the ticket machine, rather than checking his lottery ticket at the counter. (See id. ¶¶ 18-19). Immediately thereafter, Hayes checked the ticket of a white customer without issue. (See id. ¶¶ 19-21). When the Jamaican customer returned to the counter, stating the ticket machine was broken, Hayes told him, "[Y]ou stupid people just don't know how to work [the machine]." (See id. ¶¶ 22-23).

Stankiewicz engaged in protected activity when she complained to her manager about Hayes' behavior. See Oliva, 604 F.3d at 798. Stankiewicz acted under a good faith, reasonable belief that Hayes' comments and refusal to serve nonwhite customers violated Section 1981. See Castleberry, 863 F.3d at 267. Section 1981 is not limited to contract formation—it also protects the "enjoyment of all benefits . . . of the contractual relationship." See 42 U.S.C. § 1981(b); see also Pinckney, 2021 WL 3578983, at *2. Allegations that nonwhite customers are subject to racist remarks and delayed service, while white customers are served without

complaint, raise "a reasonable expectation that discovery will reveal evidence of" protected activity. See Connelly, 809 F.3d at 789.

### 2. *Causation*

A plaintiff must establish a causal link between her protected activity and the materially adverse employment action. Section 1981 requires that an employee satisfy but-for causation at all stages of the claim. See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 589 U.S. ___, 140 S. Ct. 1009, 1014-15 (2020).[3] However, "a plaintiff alleging retaliation has a lesser causal burden at the *prima facie* stage." Carvalho-Grevious, 851 F.3d at 259. The plaintiff must allege facts that are "'sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action.'" See id. An employee satisfies this burden by alleging her employer engaged in a "pattern of antagonism" following the complaint. See Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997). An employer's failure to investigate an employee's complaint, for example, can support an inference that the employer also retaliated against the employee for filing the complaint. See id. at 922. Timing of the adverse employment action may also be

---

[3] Pump N' Pantry argues Stankiewicz's claim should be dismissed for a failure to satisfy but-for causation at the pleading stage. (See Doc. 21 at 6-10). While Stankiewicz erroneously uses "motivating factor" language in parts of the complaint, (see Doc. 19 ¶¶ 43, 51), she also alleges Pump N' Pantry terminated her "in retaliation for her complaint of race discrimination, sexual orientation discrimination[,] and of a hostile work environment . . . ," (see id. ¶ 39). A single event can have multiple but-for causes. See Bostock v. Clayton County, 590 U.S. ___, 140 S. Ct. 1731, 1739 (2020). Moreover, at the motion to dismiss stage, we are instructed to accept a complaint's factual allegations, and disregard its legal conclusions. See Santiago, 629 F.3d 121, 130-31. As discussed herein, Stankiewicz's factual allegations are sufficient to show a "plausible claim for relief." See Iqbal, 556 U.S. at 679.

indicative of causation if it is "unusually suggestive of retaliatory motive." See Shaner v. Synthes, 204 F.3d 494, 505 (3d Cir. 2000) (citing Krouse v. Am. Sterilizer, 126 F.3d 494, 503 (3d Cir. 1997)).

Stankiewicz satisfies causation by pleading facts demonstrating that her complaint of racial discrimination was the likely reason for the adverse employment action. See Carvalho-Grevious, 851 F.3d at 259. Before filing suit, Stankiewicz worked at Pump N' Pantry for 20 years with "no issues, complaints, or write-ups." (See Doc. 19 ¶ 38). In relaying the complaints to the district manager, Stankiewicz's manager stated that Stankiewicz "was refusing to work her schedule because of a conflict with another employee." (See id. ¶ 32). The district manager responded that Stankiewicz could "put in her resignation if she didn't like another employee or her schedule." (See id. ¶ 33). Within days, Stankiewicz was completely removed from the work schedule with no further explanation. (See id. ¶ 36).

Stankiewicz's allegations as a whole—her clean disciplinary record, the managers' statements, and Pump N' Pantry's refusal to answer her calls—sufficiently demonstrate a pattern of antagonism following her complaint of racial discrimination. See Woodson, 109 F.3d at 921. Pump N' Pantry's retaliatory intent can also be inferred from its alleged failure to ask its human resources department to investigate the discrimination complaint. See id. at 922. Finally, Stankiewicz alleges that less than two weeks lapsed between Pump N' Pantry's reopening and her removal from the schedule. (See Doc. 19 ¶¶ 12, 13, 36). Such a short temporal proximity is "unusually suggestive of retaliatory motive" and further supports causation. See Shaner, 204 F.3d at 505. As a result, Stankiewicz has sufficiently

pled that her complaint of racial discrimination was the likely reason she was terminated.  See Carvalho-Grevious, 851 F.3d at 259.

In summary, we find that Stankiewicz has pled sufficient facts to support a reasonable inference that Pump N' Pantry retaliated against her for her complaint of racial discrimination.  See Connelly, 809 F.3d at 789.  We will deny Pump N' Pantry's motion to dismiss the Section 1981 claim.

### B.     Retaliation Under Title VII and the PHRA

Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  See 42 U.S.C. § 2000e-3(a).[4]  The elements of a *prima facie* case of retaliation under Title VII are identical to the elements of retaliation under Section 1981.  See Carvalho-Grevious, 851 F.3d at 256-57.  Our court of appeals also applies the same analytical framework to PHRA retaliation claims.  See Connelly, 809 F.3d at 791 n.9.  Pump N' Pantry moves to dismiss the Title VII and PHRA claims on the premise that Stankiewicz has not sufficiently pled protected activity.  (See Doc. 21 at 10-13).

---

[4] The PHRA similarly forbids discrimination "against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."  See 43 PA. STAT. AND CONS. STAT. ANN. § 955(d).

A plaintiff may be protected from retaliation under Title VII when she "oppose[s] any practice made an unlawful employment practice" by the statute. See 42 U.S.C. § 2000e-3(a); see also Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006). A plaintiff must oppose employment practices that would be prohibited under Title VII for her activity to be protected. See Kengerski v. Harper, 6 F.4th 531, 537 (3d Cir. 2021); Hatcher v. Conifer Realty LLC, No. 1:04-CV-1872, 2007 WL 3237518, at *4 (M.D. Pa. Oct. 30, 2007) (Conner, J.). The plaintiff must hold "an objectively reasonable belief, in good faith" that the activity she opposes is unlawful under Title VII. See Kengerski, 6 F.4th at 536 (citing Moore, 461 F.3d at 341).

Unlawful activity includes harassment of an employee for her association with a family member who belongs to a protected class. See id. at 534, 538-39. For a retaliation claim based on plaintiff's complaint of a hostile work environment, the plaintiff "need not show that [her] working environment in hindsight was actually hostile, only that [she] held an objectively reasonable belief that it was." See id. at 537. Opposing workplace conduct that is "so minor and isolated" is not protected activity because no reasonable person could believe it violates Title VII. See id. at 537 (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001)). Evidence of repeated hostile comments over time, however, whether or not they directly refer to the person with whom the plaintiff is associated, is enough to support a reasonable belief of a Title VII violation. See id. at 540. A reasonable person could believe the comments are at least partly directed at the plaintiff when they are made not long after the plaintiff reveals her association with the family member in a protected class. Id.

In the matter *sub judice*, Stankiewicz alleges Hayes repeatedly made homophobic comments, including "gays need to be shot." (See Doc. 19 ¶ 26). Hayes continued to make these comments even after Stankiewicz informed him she was the mother of a gay man who was married to another Pump N' Pantry employee. (See id. ¶¶ 27-28). Stankiewicz then notified her manager of these comments and indicated that she was uncomfortable working with Hayes. (See id. ¶ 29). Hayes' homophobic statements are neither minor nor isolated. See Kengerski, 6 F.4th at 537. Stankiewicz alleges these comments were repeatedly made before and after she revealed her close familial association with two gay men. As a result, a reasonable person could believe Hayes' comments were at least partly directed at Stankiewicz and created a hostile work environment. See id. at 542. Stankiewicz therefore sufficiently pleads that her complaint to management regarding Hayes' homophobic comments was the likely reason for her termination under Title VII and the PHRA. See Carvalho-Grevious, 851 F.3d at 259.

## IV.   Conclusion

We will deny Pump N' Pantry's motion (Doc. 20) to dismiss Stankiewicz's Section 1981, Title VII, and PHRA retaliation claims. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   January 4, 2022